**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 27, 2013

LETTER TO COUNSEL:

>       RE:     *Channell Tracey King v. Commissioner, Social Security Administration*;
>               Civil No. SAG-12-0922

Dear Counsel:

On March 26, 2012, the Plaintiff, Channell Tracey King, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Ms. King's reply. (ECF Nos. 19, 20, 21). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. King filed her initial claim on October 24, 2008, eventually amending her onset date to October 1, 2008. (Tr. 39, 148-50). Her claims were denied initially on February 5, 2009, and on reconsideration on June 3, 2009. (Tr. 79-82, 84-85). A hearing was held on July 2, 2010, before an Administrative Law Judge ("ALJ"). (Tr. 34-75). Following the hearing, on July 28, 2010, the ALJ determined that Ms. King was not disabled during the relevant time frame. (Tr. 15-33). The Appeals Council ("AC") denied Ms. King's request for review (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. King suffered from the severe impairments of nerve compression of the right elbow, wrist, and index finger, status post surgical release in January 2008; and major depressive disorder/bipolar disorder. (Tr. 20). Despite these impairments, the ALJ determined that Ms. King retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can understand, carry out, and remember simple instructions in 2-hour increments; interact occasionally with supervisors and coworkers but must avoid direct interaction with the general public; and adapt to simple changes in a routine work setting.

*Channell Tracy King v. Commissioner, Social Security Administration*
Civil No. SAG-12-0922
March 27, 2013
Page 2

(Tr. 22).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. King could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame.  (Tr. 28).

Ms. King first makes a procedural argument that remand is required because she did not receive an audio recording of the hearing before the AC declined to review her case.  She also argues: (1) that the ALJ's credibility determination was based on an inaccurate and incomplete summary of the facts; (2) that the ALJ improperly rejected the opinions of her treating psychiatrist; (3) that the ALJ did not account for limitations that state agency psychiatric consultants found she had; and (4) that the ALJ failed to present a hypothetical to the VE incorporating all of her nonexertional limitations due to mental illness.  Each argument lacks merit.

Ms. King contends that the AC failed to provide her counsel with an audio recording of the ALJ hearing, despite numerous requests.  (Pl. Mot. 4).  Her attorney avers that because of this omission, he was unable to submit a written argument to the AC before it issued a denial of request to review seventeen months later.  (Pl. Mot. 3).  The regulations state that a claimant may request and receive "a copy or summary of the transcript of oral evidence."  404 CFR § 404.974.  Ms. King's counsel reports that his office received "copies of the exhibits and a duplicate recording/recordings" on CD on April 28, 2011, but he was unable to unencrypt the enclosed CDs.  (Pl. Mot. 2).  He states repeatedly that he was deprived of a "recording" or "audio recording" of the hearing.  (Pl. Mot. 2-4, Pl. Reply Mem. 8, 10).  I will assume that Ms. King did not seek or receive a typed hearing transcript, though her motion does not directly address this point.

I am unable to find reversible error in the AC's failure to resend an operable CD.  First, as noted above, Ms. King's counsel could have sought a written transcript instead of a recording, or could have filed a written brief noting the unavailability of the hearing transcript but raising legal arguments based on other grounds.  Second, the AC "permit[s]—but [does] not require— the filing of a brief . . . and the Council's review is plenary."  *Sims v. Apfel*, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085-86, 147 L. Ed. 2d 80 (2000).  Ms. King requested review by the AC in a letter dated August 18, 2010.  (Pl. Mot. Ex. A).  Because the AC evaluates the entire record, a claimant's failure to submit written arguments does not waive any issue for later review.  *See Sims*, 530 U.S. at 112 (finding "the Council, not the claimant, has primary responsibility for identifying and developing the issues" and that it would be inappropriate to impose an issue-exhaustion requirement on a claimant's request for AC review).  A transcript of the hearing is included in the administrative record, which suggests that the audio recording of the hearing was preserved, and that the AC was not impeded in its review of the entire record.  *But see Borowski v. Heckler*, 581 F. Supp. 549, 552 (N.D. Ind. 1984) (remanding based on "glaring internal contradiction" where the AC stated that it considered hearing testimony, but the Commissioner had requested the AC review the case *de novo* because the hearing tape was non-transcribable).  Moreover, I lack jurisdiction to review the AC's decision to deny review.  The ALJ's decision, which predated Ms. King's request for the audio recording, constitutes the reviewable decision of the Commissioner.  *Sims*, 530 U.S. at 106-07.  The subsequent events relating to the request

for audio recording have no effect on the adequacy of the ALJ's decision.  Any procedural error, then, does not warrant remand.

        Turning to her substantive arguments, Ms. King alleges that the ALJ's credibility determination was premised on an inaccurate and incomplete summary of the facts.  The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as fatigue.  *Chater*, 76 F.3d at 594.  First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant.  *Id.*  After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work."  *Id.* at 595.  The ALJ followed that process in this case. In support of her evaluation, the ALJ cited (1) Dr. Silverine Samaranayake's notes indicating Ms. King's depression improved with treatment and medication; (2) Ms. King's testimony about her ongoing ability to engage in substantial activities of daily living, such as shopping alone, driving, maintaining her household, and interacting with others; and (3) opinions by two state agency medical consultants that Ms. King had only moderate limitations in her mental and social capabilities.  (Tr. 23-26).  The ALJ considered Ms. King's hospitalizations and treatment for psychiatric issues, including anxiety and major depressive disorder.  (Tr. 25).  Ms. King alleges that the ALJ failed to consider relevant parts of her testimony, but offers no objective support that contradicts the ALJ's analysis.  (Pl. Mot. 25-26).  On balance, substantial evidence supports the ALJ's finding that Ms. King's assertion of "complete inability to perform any sustained activity for an eight-hour day[,]" (Tr. 25), was inconsistent with evidence in the record of her positive response to treatment, several independent determinations that she was only moderately limited in mental abilities, and her ongoing ability to independently conduct daily personal business.

        Ms. King next asserts that the ALJ improperly rejected the opinions of her treating psychiatrist, Dr. Samaranayake.  Although the opinion of a treating physician can be entitled to controlling weight, such an opinion is not entitled to such weight if it is inconsistent with the other substantial evidence of record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Moreover, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability.  20 C.F.R. § 404.1527(d)(2); SSR 96-5p.  Here, the ALJ considered that Dr. Samaranayake first opined in July 2008 that Ms. King would be able to work part-time with limitations on her interactions with co-workers.  (Tr. 27, 367).  Nearly two years later, in June 2010, Dr. Samaranayake asserted that Ms. King could not work at all because she had no capacity to maintain concentration or deal with work stresses and was seriously limited in her ability to engage in social interactions with coworkers, supervisors, and the public.  (Tr. 27, 535-37).  Dr. Samaranayake supported this opinion by reporting recent difficulties that Ms. King had experienced with her husband and daughter, and changes that Dr. Samaranayake had made in Ms. King's medications in the preceding weeks.  (Tr. 538).  The ALJ did not outright reject Dr. Samaranayake's opinion, but assigned it limited weight in light of its inconsistencies with other evidence on the record, including Ms. King's testimony about her daily activities.  A treating psychiatrist's opinion may be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. 404.1527(c)(2).  No such

objective evidence exists here.  Ms. King points only to her own testimony to counter the ALJ's finding that Dr. Sawaranayake's opinion was unsupported by the record on the whole.  (Tr. 27). This Court is able to discern the ALJ's reasons for affording the opinion limited weight and, thus, finds that the ALJ's determination is supported by substantial evidence.

Ms. King also contends that the ALJ failed to incorporate all of the limitations found by the state agency psychiatrists into her RFC.  Ms. King is correct that Drs. Peterson and Hill Keyes  checked multiple "moderate limitations" in Section I of the Mental Residual Functional Capacity Assessment, (Tr. 340-41, 403-04),and that the ALJ did not include all of those limitations in his RFC or his hypothetical to the VE, (Tr. 69-72).  However, the relevant portion of the psychiatrists' opinions is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a detailed narrative functional capacity assessment.  *See* Program Operations Manual System DI 24510.060B(2) (Mental Residual Functional Capacity Assessment) ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.").  Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations.  *See, e.g., Andrews v. Astrue*, Civil No. SKG-09-3061, slip op. at *39 (D. Md. Oct.  25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so.").  In this case, the ALJ actually referenced each of the Section I limitations noted by the state agency psychiatrists, but did not find the multiple moderate limitations to preclude employment consistent with the RFC.  More importantly, the ALJ adequately addressed the limitations found in the state agency psychiatrists' Section III RFCs, which suggest that Ms. King is capable of simple work with appropriate limitations.  (Tr. 22-26, 342, 401).

Finally, Ms. King argues that the ALJ failed to present a hypothetical incorporating all of her nonexertional limitations due to her mental illness. Her argument fails.  The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations.  *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988).  In cross-examining the VE, Ms. King's counsel defined "moderate" limitation in any given functional area as being unable to perform ten percent of the time in that area.  (Tr. 73).  He cited no authority for that definition.  The ALJ was not obligated to adopt the arbitrary definition. Because I have found the ALJ's assignment of limited weight to Dr. Samaranayake's opinion and the basis for the ALJ's RFC valid, the hypothetical questions posed were properly supported by substantial evidence.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 19) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 20) will be GRANTED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

*Channell Tracy King v. Commissioner, Social Security Administration*
Civil No. SAG-12-0922
March 27, 2013
Page 5


Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge